## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jane Cuddy, being sworn, state:

### Introduction and Agent Background

1. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a criminal complaint.

2. I have been employed by the Drug Enforcement Administration ("DEA") since January of 2021. I am currently assigned to the New England Field Division, Task Force 5, as a Special Agent, where I investigate drug trafficking and money laundering organizations and their ties to violent crime. I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia in May of 2021, where I received specialized training in narcotics and money laundering investigations and related legal matters. In 2010, I received a Bachelor of Arts degree in Crime and Justice Studies from the University of Massachusetts, Dartmouth. In 2020, I received a master's degree in public policy from the University of Massachusetts, Dartmouth.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records.

4. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national, and international levels,

including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the way drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I am familiar with the way drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses." I have received training in field-testing controlled substances.

5.      Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. I have received advanced training and certifications in the extraction of data from mobile devices Through this training and experience, I have learned that drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which narcotics traffickers use coded, veiled, or slang-filled conversations when discussing their illegal business, in an effort to further prevent detection, and that they often use text messages in lieu of phone calls to avoid speaking over the telephone. I am familiar with the street terms used by drug traffickers, as well as the methods they use to disguise conversation and operations.

## PURPOSE OF AFFIDAVIT

6.     I am submitting this affidavit in support of an application for a criminal complaint charging that on or about January 31, 2025, Keith MEREDITH ("MEREDITH") attempted to possess with the intent to distribute five kilograms or more of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 846, (b)(1)(A)(ii).

## PROBABLE CAUSE

7.     On January 30, 2025, I was contacted by members of the Illinois State Police ("ILSP") regarding a traffic stop that ILSP had conducted on Interstate 80. I learned that an ILSP Trooper stopped a white Ford pickup truck bearing CA registration 38692C4 (the "Ford") for an equipment violation. The Ford was being operated by an individual referred to herein as CW-1, who was accompanied by an individual referred to herein as CW-2.[1]

8.     CW-1 and CW-2 consented to the ILSP searching the Ford. ILSP used an x-ray machine to facilitate that search and located two concealed compartments – one in the back seats of the Ford and another in the back wall of the Ford. Investigators accessed these concealed compartments and recovered 17 kilograms of suspected cocaine[2] from the two compartments.

9.     Following this seizure, investigators interviewed CW-2, who stated that the cocaine was destined for Massachusetts. CW-2 stated that approximately one month ago, he made a similar

---

[1] CW-1 and CW-2 have been cooperating with investigators since January 30, 2025. CW-1 has no criminal history. Based on their cooperation in this case, I believe CW-1 and CW-2 are reliable.

[2] Investigators field tested the substances within the compartment with positive results; laboratory testing is pending.

trip when he delivered controlled substances to an individual he knew as "Tic." Although "Tic" provided two delivery addresses to CW-2 (75 Paddock Road, Bridgewater, MA (the "Bridgewater address") and 162 Copeland, St., Quincy, MA (the "Quincy address")), CW-2 ultimately delivered the controlled substances to the Bridgewater address. CW-2 described "Tic" as a black male who drove a rented BMW X7. CW-2 said that "Tic" would pay him/her a $1,000 per kilogram delivery fee.

*Attempted Delivery of 17 Kilograms of Cocaine in Massachusetts*

10. After being stopped by ILSP, CW-1 and CW-2 agreed to be escorted by ILSP to the delivery location in Massachusetts.

11. At approximately 12:00 p.m. on January 31, 2025, CW-2 received a Signal message from MEREDITH instructing him to drive to the Bridgewater address.

12. At approximately 2:30 p.m., investigators established surveillance at the Bridgewater address. Prior to doing so, investigators placed quantities of counterfeit cocaine (known colloquially as "sham") in the Ford.

13. At approximately 3:00 p.m., the Ford arrived at the Bridgewater address, CW-1 and CW-2 placed a recorded phone call to MEREDITH and stated that they were at the Bridgewater address.

14. During this call, MEREDITH told CW-1 and CW-2 that he would arrive at the Bridgewater address in approximately five minutes and that CW-1 and CW-2 should remain there.

15. Approximately five minutes later, a BMW X7 bearing Massachusetts registration 5RRM84 registered to SIXT Rental Cars arrived at the Bridgewater address. MEREDITH exited

4

this car and instructed CW-1 and CW-2 to drive farther into the driveway, which they did. CW-2 then exited the Ford and explained that he had to open the concealed compartment to access the cocaine. At that time, MEREDITH walked up to the front door at the Bridgewater address and then returned to the driveway where he waited outside of the Ford. CW-2 placed a quantity of the "sham" cocaine into a bag and delivered it to MEREDITH while CW-2 worked to collect the remaining "sham" cocaine from the Ford. MEREDITH provided a quantity of United States currency to CW-1 and CW-2.

16. While CW-2 was unloading the "sham" cocaine from the rear concealed compartment, investigators approached MEREDITH, CW-1, and CW-2 and placed under arrest.

## CONCLUSION

17. Based on the foregoing, I submit that there is probable cause to believe that on January 31, 2025, MEREDITH attempted to possess with the intent to distribute five kilograms or more of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 846, (b)(1)(A)(ii).

*Jane Cuddy /by Paul G. Levenson*
Jane Cuddy
Special Agent
U.S. Drug Enforcement Administration


Sworn via telephone in accordance with Fed. R. Crim. P. 4.1,

_____
HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE

5